No. 85-384

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

CLYDE LEWIS,

       Defendant and Appellant.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Allen Beck, Billings, Montana

    For Respondent:

      Hon. Mike Greely, Attorney General, Helena, Montana
      Judy Browning, Asst. Atty. General, Helena, Montana
      Harold Hanser, County Attorney, Billings, Montana

_____

Submitted on Briefs: Jan. 23, 1986

Decided: March 20, 1986

Filed: MAR 20 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Lewis, appeals from his Yellowstone County District Court jury trial conviction and sentence of 30 years in the Montana State Prison.

We affirm.

The issues raised by defendant and appellant are:

1. Whether the District Court erred in granting the State's motion in limine precluding introduction of evidence concerning defendant's physical condition?

2. Whether there was sufficient evidence to support the jury's finding that defendant put his victim in fear of immediate bodily injury?

3. Whether the District Court's jury instruction on direct and circumstantial evidence was proper?

4. Whether defendant's sentence is disproportionate to any reasonable construction of the facts in the case?

On June 8, 1984 at 1:00 a.m. there occurred a robbery at a Kwik Way store in Billings. Defendant, his brother, and two women spent the evening riding around the city and drinking. At approximately 1:00 a.m. they stopped at the Kwik Way. There is conflicting testimony as to what occurred next.

According to the clerk on duty that night, and other State's witnesses, defendant's brother Don entered the store and asked about the price of beer. Don left and returned with the defendant. Both men went to the cooler and came out with a case of beer and two bottles of wine.

As the clerk rang up the sale, he noticed Don go to the door of the store and look outside. Suspecting that the men

were about to steal the beer and wine, the clerk reached for a baseball bat kept beneath the counter. At this point Don said something to the defendant who then reached back with his arm, and brought his arm forward as if to put something under his coat. With one hand under his coat, defendant told the clerk that he wasn't going to pay for the beer and wine and that he wanted what was in the till. Although the clerk never saw a gun, he testified that he believed the defendant had a gun and felt threatened. The defendant's hand remained under his coat the rest of the time he was in the store as well as when he left the store.

While the robbery was occurring, two men in a truck pulled into the store's parking lot. The defendant saw the truck and told the clerk he wanted the money fast. The clerk emptied the till, including a marked five dollar bill. The defendant took the money and told the clerk not to leave the store. Don took the beer and wine and the two men fled the store.

Jeff Reed, one of the persons in the truck, noticed the defendant running or walking away from the store with one hand in his coat pocket. The clerk grabbed Reed as he entered the store, and asked him to get the license plate number of defendant's car. Reed observed the license plate number, the car's make and color. They followed the car, but could not catch it.

As the defendant and his brother left the store, and headed toward their car, one of the women in the car, Diana Loomis, saw the defendant hand his brother some money. The other woman in the car, Cindy Sawyer, testified that the two men came running out of the convenience store and both of them screamed at her to get out of there.

After leaving the store, the defendant and his brother noticed that they were being followed. The brothers then handed Cindy Sawyer some items which she threw from the car. Shortly thereafter they were stopped by police. The police later recovered the beer, wine, and currency thrown from the car, including the marked five dollar bill.

According to the testimony of defendant and his brother, who pled guilty to the robbery, the decision to rob the store was made unilaterally by Don Lewis. When the defendant and Don were at the counter, Don said he would not pay for the beer and wine and demanded money from the till. The defendant had nothing to do with initiating or carrying out the robbery. The reason he placed his hand under his coat was because of a physical condition causing him pain in the abdominal area. The defendant was angry with Don for robbing the store, and the two argued intensely about the robbery after leaving the Kwik Way.

The first issue raised by the defendant is whether the District Court erred in granting the State's motion in limine precluding introduction of evidence concerning the defendant's physical condition. The defendant claims he suffers from abdominal problems causing him severe and continuous pain. He alleges that his physical condition explains why he had his hand under his coat during the robbery. Therefore, the evidence was relevant, and granting the State's motion in limine was prejudicial to his defense. Defendant's argument is not persuasive.

First, the District Court did not grant the State's motion in limine, it was denied. Instead, when the defendant attempted to elicit testimony from the defendant's mother concerning the nature of his illness, the State objected to

the relevance of the testimony and the objection was sustained. Nevertheless, defendant's mother was allowed to mention throughout her testimony that defendant was ill.

Second, the defendant and his sister were both allowed to testify concerning the specific nature of his illness, and the fact that defendant often placed his hand on his side because of the pain. Defendant further testified that if he did have one hand on his side during the robbery, it was because of his illness.

We hold that evidence concerning defendant's physical condition was relevant, and it was error for the trial court to sustain the State's objection to the mother's testimony. Nevertheless, the error was harmless. The defendant was still able to introduce abundant evidence concerning his physical condition through the testimony of his brother, sister, and himself. The jury chose not to believe the defendant, and there is substantial evidence on the record to support the jury's decision.

Defendant's second issue is whether there was sufficient evidence to support the jury's finding that the defendant put his victim in fear of immediate bodily injury. The defendant was convicted of robbery under § 45-5-401(1)(b), MCA. That section states:

> A person commits the offense of robbery if in the course of committing a theft he:
>
> . . .
>
> (b) threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury . . ..

Defendant argues that there was insufficient evidence to support a finding that he placed the clerk in fear of

immediate bodily injury. We disagree. There is ample evidence in the record to support such a finding.

The clerk testified that the defendant swiftly placed his hand under his coat and demanded the money in the till. The clerk stated that he believed the defendant had a gun and that his life was in jeopardy. The defendant's actions were sufficient to support the jury's finding that defendant purposely or knowingly placed the clerk in fear of immediate bodily injury. The jury may use common experience to conclude that a particular situation would cause a person to experience fear. State v. Case (Mont. 1980), 621 P.2d 1066, 1069, 37 St.Rep. 2057, 2059-60. An actual weapon need not be used. See Criminal Law Commission Comments on § 45-5-401, MCA. There was sufficient evidence to support the jury's conclusion that the defendant placed the clerk in fear of immediate bodily injury.

The third issue on appeal is whether the District Court's jury instruction on direct and circumstantial evidence was proper. The trial court offered the following instruction regarding circumstantial evidence:

> There are two classes of evidence recognized and admitted in courts in the State of Montana. One is "direct evidence," and the other is "circumstantial evidence." In "direct evidence," the witnesses testify directly of their own knowledge of the main fact or facts to be proven, while "circumstantial evidence" is the proof of certain facts and circumstances in a given case from which the jury may infer other connecting facts which usually and reasonably follow according to the common experiences of mankind.

The defendant objected to this instruction, and instead offered the following instruction which the trial court refused to give:

> Acts may be proven by circumstantial evidence as well as by direct testimony of eye witnesses, but the facts and circumstances in evidence should be

- 6 -

consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of the defendant's innocence.

Both direct evidence and circumstantial evidence are acceptable as means of proof. Neither is entitled to greater weight than the other.

The trial court refused defendant's instruction because the case did not hinge upon circumstantial evidence. The District Court stated:

There were only three people in that store at the time of the holdup. All three of them have testified, and that's direct evidence.

We have addressed this issue before in State v. Gould (Mont. 1985), 704 P.2d 20, 42 St.Rep. 946, and State v. Bean (1959), 135 Mont. 135, 337 P.2d 930. In those cases we held that an instruction such as that proposed by the defendant is only appropriate where all of the evidence is circumstantial. Where there is substantial direct evidence, a district court may properly refuse to give such an instruction. Gould, 704 P.2d at 31-32; Bean, 135 Mont. at 137.

The District Court instructed the jury on the definition of direct and circumstantial evidence, and on the equal weight of each. It was not error for the District Court in this case to refuse to give defendant's proffered instruction as there was substantial direct evidence of defendant's guilt.

Finally, defendant argues that his sentence is disproportionate to any reasonable construction of the facts in the case. Defendant's sentence was within the permissable statutory range, and, in the absence of clear abuse of discretion is properly reviewed by the Sentence Review Division. Here, there was no abuse of discretion by the District Court, and this issue is a matter for the Sentence

Review Division, and not this Court.  State v. Beach (Mont. 1985), 705 P.2d 94, 107, 42 St.Rep. 1080, 1094.

For the reasons stated above, we affirm the conviction and sentence of the defendant.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices