CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Cory Scott Walsh appeals his criminal convictions in the District Court for the Twenty-First Judicial District, Ravalli County. A jury found Walsh guilty of aggravated assault, accountability for aggravated assault, accountability for misdemeanor assault and assault. We affirm.
The issues on appeal are whether sufficient evidence supports the jury’s findings and whether prosecutorial misconduct was established in the State’s amendments to the information.
Because the sufficiency of the evidence is at issue, we set forth the facts in the light most favorable to the prosecution.
On May 11, 1994, Melodie Stewart, her ten-year-old daughter Chellsi, and her fiance Christopher Lecce went to Lake Como, near Hamilton, Montana, for a picnic. They left the lake at dusk in Stewart’s Chevrolet pickup truck, with Lecce at the wheel.
A car came up behind the pickup on the highway and began following it closely with its bright lights on. Lecce flipped his rear-view mirror down so that the bright lights would not be in his eyes, and slowed down to let the car pass. The car continued to tailgate the pickup with its bright lights on for a little over two miles. When the car finally passed them, Lecce flicked his bright lights on and off.
The two persons in the car, Cory Walsh and Christopher Driscoll, made obscene gestures out of the car windows. They then stopped the car directly in front of the pickup. They jumped out, leaving their car doors open and blocking the roadway. Appearing very upset, they approached the pickup.
Lecce got out of the pickup and the three men began to argue. Walsh was very close to Lecce, and Lecce pushed him away. Stewart, *73 still in the car with Chellsi, screamed at them to stop. Walsh said, “Shut up, bitch.” Lecce turned to look at Driscoll, who was behind him. Walsh then hit Lecce so hard that it brought him to his knees. When Lecce got up, Walsh hit him again. Lecce tried to get up, but both Walsh and Driscoll were hitting him, preventing him from getting to his feet.
Stewart locked the doors to the pickup and told Chellsi to lie down out of sight. Lecce was on the ground and Walsh and Driscoll were kicking him when a second car drove up. Stewart hoped someone in the second car would help them. However, three people got out of the car hooting and hollering, and one of them, later identified as Walsh and Driscoll’s friend Joshua Vieth, joined in hitting and kicking Lecce.
Stewart got out of the pickup with a cellular phone in her hand and said (untruthfully — the phone was out of range) that she had called the police, who were on their way. The two cars and their occupants left the scene.
Lecce was left lying unconscious in a puddle of blood. When he regained consciousness, Stewart drove him to the hospital. He had bumps and bruises all over his head and bruises on his chest. His throat was injured so that he had a hard time swallowing and could not talk. Stewart was instructed to wake him every hour that night because of his head injury. He lost one tooth during the assault and another the next day. For several months, he had problems with his balance and suffered from headaches.
Walsh was initially charged with aggravated assault on Lecce. The State later obtained leave to amend the information, adding charges of accountability for aggravated assault on Lecce by Driscoll and Vieth, and assault on Stewart and Chellsi. The jury found Walsh guilty of aggravated assault on Lecce, accountability for aggravated assault by Vieth on Lecce, accountability for assault by Driscoll on Lecce, and assault on Chellsi.
ISSUE 1
Was sufficient evidence presented at trial to support the charges?
In criminal appeals, this Court reviews the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Richards (1995), 274 Mont. 180, 184, 906 P.2d 222, 224.
The State initially points out that Walsh did not move for judgment of acquittal based on insufficiency of the evidence either at the close *74 of the prosecution’s case or at the close of all the evidence. He did, however, move for new trial, arguing that the evidence was insufficient to support a finding of serious bodily injury to Lecce or to support the charge of assault on Chellsi.
Section 46-16-702(2), MCA, requires that a motion for new trial must be filed within thirty days following a verdict. The State points out that Walsh’s motion for new trial was untimely because it was not filed until some fifty-five days after the verdict. While the State is correct that the motion was untimely and should not have been considered, see State v. Gollehon (1995), 274 Mont. 116, 906 P.2d 697, this argument was not raised before the District Court, and therefore we consider it waived.
Accordingly, we will consider whether the evidence was sufficient to support the verdict on the charges of aggravated assault upon Lecce and assault upon Chellsi. However, because Walsh failed to argue at any time prior to filing his brief on appeal that the evidence was insufficient to support the verdict on the accountability charges, we decline to consider that argument. See State v. Johnson (1993), 257 Mont. 157, 162, 848 P.2d 496, 499.
Under § 45-5-202, MCA, a defendant commits aggravated assault if he purposely or knowingly causes serious bodily injury to another. At the time of the offenses charged here, “serious bodily injury” was statutorily defined as bodily injury that:
(i) creates a substantial risk of death;
(ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ; or
(iii) at the time of the injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ.
Section 45-2-101(59), MCA (1993). As the District Court noted, the trial record in this case is devoid of evidence that Lecce was in substantial risk of death. Therefore, we examine the record for evidence of serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ, or reasonable expectation of the same.
Walsh contends that the evidence at trial was not sufficient to sustain his conviction of aggravated assault because Lecce did not suffer serious bodily injury as defined in § 45-2-101(59), MCA (1993). Walsh cites the opinion testimony of Lecce’s dentist, Dr. Olson. Dr. *75 Olson testified that although Lecce’s loss of two teeth would cause serious or permanent disfigurement and impairment of the function of the teeth in general, the loss of the two teeth could not reasonably have been expected to cause a protracted impairment of the function of the teeth in general. Dr. Olson reasoned that a lot of people get along without all of their teeth.
Dr. Olson further testified that, prior to the beating, Lecce had crowns on teeth numbers eight and nine, but that there were teeth underneath with which he could work. After the beating, the root was exposed on tooth number nine, and Dr. Olson had to perform a root canal and insert a post inside the root large enough to place a crown where the tooth had previously been. He also replaced the crown on tooth number eight.
Walsh has cited no authority indicating that medical testimony is necessary to establish serious bodily injury. A nonexpert witness is competent to testify as to his past or present condition. State v. Bower (1992), 254 Mont. 1, 10, 833 P.2d 1106, 1112. Lecce testified that it took about eight appointments and four months before Dr. Olson was able to insert replacement teeth for him. He also testified that, since the beating, there were some foods he could no longer eat or could eat only with caution.
We note that several state courts have held that the loss of a tooth was sufficient to support a charge of aggravated assault. See State v. Bridgeforth (Minn. Ct. App. 1984), 357 N.W.2d 393, 394; Lenzy v. State (Tex. Crim. App. 1985), 689 S.W.2d 305, 310.
Further, as did the District Court, we consider the evidence of the injury to Lecce’s teeth in conjunction with the evidence of his other injuries. Walsh and his friends left Lecce lying unconscious in a puddle of blood. Lecce testified that the aftereffects of the beating included headaches and problems with his balance for several months. His injuries were potentially serious enough to justify a CAT scan of his head.
Walsh next points to uncertainty in the evidence as to who inflicted the blow that knocked Lecce’s teeth loose. He alludes to the absence of evidence of blood on his footwear or clothing. Lecce testified that he did not recall whether the blow which loosened his teeth occurred before or after the second car arrived. Walsh testified that he hit Lecce only once. Stewart, in contrast, testified that Lecce was lying on the ground unconscious, with Walsh and Driscoll kicking him, when the second car drove up.
*76 The weight and credibility of the evidence are exclusively within the province of the trier of fact. State v. Flack (1993), 260 Mont. 181, 189, 860 P.2d 89, 94. It was the jury’s task to determine which testimony was most credible concerning the extent of Walsh’s involvement in this incident.
Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime of aggravated assault upon Lecce beyond a reasonable doubt.
We next examine the sufficiency of the evidence concerning the charge of assault against Chellsi. Assault is defined in Montana, in relevant part, as purposely or knowingly causing reasonable apprehension of bodily injury in another. Section 45-5-201(l)(d), MCA. Walsh maintains that there was no evidence that he at any time made any move toward the occupants of the pickup. While he concedes that Chellsi’s fear may have been real, he contends her fear was not reasonably associated with actions which created an apprehension of impending bodily injury to her.
It is not necessary that the victim of an assault be the direct recipient of the defendant’s actions. In State v. Keup (1987), 228 Mont. 194, 741 P.2d 1330, this Court sustained Keup’s conviction for assault after he fired a gun at the victim’s dog, next to which the victim was standing at the time. Walsh attempts to distinguish this case from Keup, arguing that no shot was fired or move was made in Chellsi’s direction. However, it was undisputed that moves were made against Lecce, another occupant of the pickup in which Chellsi was riding.
“The jury may use common experience to conclude that a particular situation would cause a person to experience fear.” State v. Lewis (1986), 220 Mont. 418, 422, 715 P.2d 1064, 1067; citing State v. Case (1980), 190 Mont. 450, 621 P.2d 1066. Chellsi, who was ten years old at the time of this incident, testified that she saw Walsh and Driscoll walk over to her mother’s pickup and that they were big, were cussing, and appeared to be drunk. Driscoll testified that at the beginning of the confrontation with Lecce, he heard a little girl scream in the pickup. Chellsi testified that she was screaming and frightened because she thought Walsh and Driscoll were going to attack her and her mom, too. She saw Walsh punch Lecce, heard her mother scream at them to stop, and heard Walsh respond “Shut up, bitch.”
Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Chellsi reasonably apprehended *77 bodily injury to herself, as one of the essential elements of the crime of assault against her.
In summary, we determine that Walsh’s claims of insufficiency of the evidence are unsupported by the record. We affirm on all grounds raised under this issue.
ISSUE 2
Was prosecutorial misconduct established in the State’s amendments to the information?
Walsh was initially charged with aggravated assault on May 25, 1994. Two months later, the State asked for and received permission to file an amended complaint adding the accountability charges. In November 1994, two weeks before trial, the State again obtained leave to amend the information, adding the charges of misdemeanor assault against Stewart and Chellsi.
Walsh contends that the amendments were not based upon newly-discovered facts, but were instead filed in response to his refusal to accept a plea agreement. He points out that multiple charges carry with them an inherent prejudice to a defendant. He maintains that no purpose can be shown for the amendment of charges and it should not have been allowed.
“[W]hen the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion.” State v. Booke (1978), 178 Mont. 225, 230, 583 P.2d 405, 408. Section 46-11-205(1), MCA, allows an information to be amended in matters of substance at any time up to five days before trial. In this case, the prosecutor complied with all applicable legal requirements in filing the amended information.
Moreover, the record discloses no factual basis for Walsh’s assertion that the State improperly amended the information in an attempt to coerce him to plead guilty. Prejudice in a criminal case will not be presumed; it must be established by the record that the defendant was denied a substantial right. State v. Arlington (1994), 265 Mont. 127, 150, 875 P.2d 307, 321. We hold that Walsh has not established prosecutorial misconduct in the amendments made to the information.
Affirmed.
*78 JUSTICES GRAY, ERDMANN, NELSON and LEAPHART concur.