No. 01-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 337

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

JOSEPH SHERER,

    Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            Herman A. Watson III, Herman Law Office, PC, Bozeman, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
            Attorney General, Helena, Montana

            Marty Lambert, County Attorney, Bozeman, Montana


                            Submitted on Briefs:   November 15, 2001

                                        Decided:   December 20, 2002

Filed:

        _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The defendant, Joseph Sherer (Sherer), was charged in the Montana Eighteenth Judicial District Court, Gallatin County, with eight counts of Practicing Medicine Under a False Name or Impersonating a Doctor, two counts of Criminal Endangerment and one count of Aggravated Assault.  Sherer filed a Motion to Dismiss the Aggravated Assault charge, contending that the facts in the Information, even if true, could not constitute the offense of Aggravated Assault.

¶2    The District Court subsequently denied Sherer's motion, and Sherer pled guilty to all counts, expressly reserving his right to appeal the District Court's denial of his motion to dismiss. Sherer now appeals.  We affirm the District Court.

¶3    We rephrase the issue on appeal as follows:

¶4    **Did the District Court err when it determined that Sherer's conduct as alleged in the Information, if true, could constitute the offense of Aggravated Assault?**

*BACKGROUND*

¶5    From November 8, 1999, to December 10, 1999, Sherer placed a series of random phone calls from Fort Lauderdale, Florida, to approximately forty women residing in Bozeman, Montana.  During conversations with these women, Sherer would, using various aliases, impersonate a doctor by claiming that he was treating their mother or daughter for a hereditary urinary disease and telling the women that they may also be at risk for infection.

¶6    Sherer asked the women about their breast size, when the women last had a pap smear and whether they were sexually active.  Sherer

2

also asked the women to perform a test on themselves using either a razorblade, a knife or fingernail polish remover, asking them to do destructive things to their bodies under the guise of performing self-tests to diagnose possible infection.

¶7 Most of the women contacted by Sherer did not physically harm themselves. For the thirty-six women who received telephone calls and did not harm themselves, the State charged a total of eight counts of impersonating a doctor.

¶8 Three women did harm themselves at Sherer's suggestion. One woman cut her nipple and another placed a knife inside her vagina. For these two calls, the State charged Sherer with two counts of criminal endangerment. The third woman, with encouragement from Sherer under the guise of medical self-examination, cut off her left nipple. For this incident, the State charged Sherer with the offense of aggravated assault, to which Sherer pled guilty, specifically reserving his right to this appeal.

¶9 The District Court sentenced Sherer to ten years in prison for each charge of criminal endangerment to be served consecutively. For the charge of aggravated assault, the District Court sentenced Sherer to twenty years to be served concurrently with the sentences for criminal endangerment. For the counts charging Sherer with impersonating a doctor, the District Court sentenced Sherer to thirty years, all of it suspended subject to certain conditions. Based on the aggravated assault conviction, and pursuant to § 46-23-504, MCA, the District Court ordered Sherer to register as a violent offender. Sherer now appeals.

3

**¶10  Did the District Court err when it determined that Sherer's conduct as alleged in the Information, if true, could constitute the offense of Aggravated Assault?**

¶11   The grant or denial of a motion to dismiss in a criminal case is a question of law which is reviewed *de novo* on appeal.  *State v. Price*, 2002 MT 229, ¶ 9, 311 Mont. 439, ¶ 9, 57 P.3d 42, ¶ 9 (citing **State v. Hardaway, 2001 MT 252, ¶ 64, 307 Mont. 139, ¶ 64, 36 P.3d 900, ¶ 64**).

¶12   Section 45-5-202(1), MCA, the statute defining aggravated assault, provides:

> A person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another.

Conduct is the cause of a result if, without the conduct, the result would not have occurred and any additional causal requirements imposed by the specific statute defining the offense are satisfied.  Section 45-2-201(1)(a) and (b), MCA.  "Conduct" means an act or series of acts and the accompanying mental state.  Section 45-2-101(14), MCA.  An "act" includes any bodily movement, any form of communication, and when relevant, a failure or omission to take action.  Section 45-2-101(1), MCA.

¶13   In Sherer's motion to dismiss, he argued that the facts alleged in the Information forming the basis for the State's charge of aggravated assault, even if true, did not meet the statutory criteria constituting the crime of aggravated assault.  Sherer argued that "[e]ncouraging someone to injure themselves does not constitute aggravated assault.  Therefore, the causal link between

4

the Defendant's alleged acts and the resulting injury of the victims does not exist." Sherer argued that, because the allegations did not establish the offense, probable cause did not exist to charge him with the crime of aggravated assault and the charge of aggravated assault must, therefore, be dismissed.

¶14 On appeal, Sherer likewise argues that the "causation" element in the present case is too remote to form the basis of an aggravated assault charge.

> The victim who severed her own nipple, albeit at the direction of Sherer, inflicted "serious bodily injury" upon herself. No force was involved. The district court's determination that but for Sherer's telephone call the self-mutilation would not have occurred is only part of the consideration in a decision to impose legal causation for criminal liability. It is also true that but for the victim's conduct the injury would not have occurred.

¶15 Sherer directs this Court to the Pennsylvania Superior Court case of *Commonwealth v. Rementer* (Pa. Super. 1991), 598 A.2d 1300, arguing therefrom that criminal causation in this case requires a "social determination of whether it is fair in principle or just under the facts of the case to expose [Sherer] to criminal liability" under the aggravated assault statute, and contends that exposure to liability under the statute would require utilizing tort proximate cause principles. Sherer further argues that, because aggravated assault is designated as an offense for which Sherer must register as a "violent offender" pursuant to § 46-23-504, MCA, this Court ought to abide by Black's Law Dictionary's definition of "violent offenses," which characterizes violent offenses by extreme physical force and assault and battery by means

5

of a dangerous weapon, and that to do otherwise amounts to imposing criminal liability where the criteria for criminal causation are non-existent. See Black's Law Dictionary (6th ed. 1990).

¶16 Sherer does concede, as this Court stated in *State v. Walsh* (1997), 281 Mont. 70, 931 P.2d 42 (*overruled on other grounds*), that it is not necessary that the victim of an assault be the direct recipient of the defendant's actions, and, therefore, that the defendant's act of force need not be directed intentionally toward the injured victim. *Walsh*, 281 Mont. at 76, 931 P.2d at 46. Sherer argues, however, that this rule presumes that the defendant must be within close physical proximity to the intended victim, and therefore inapplicable to this situation.

¶17 First, we agree with the State that *Commonwealth v. Rementer* is inapposite. In *Rementer*, the defendant had beaten the victim who then fled into the path of an oncoming car. The court analyzed the difference between tort and criminal causation, stating:

> In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability or was the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it?
>
> . . . .
>
> [I]f the fatal result was an unnatural or obscure consequence of the defendant's actions, our sense of justice would prevent us from allowing the result to impact on the defendant's guilt.

6

*Rementer*, 598 A.2d at 1304-07.  The *Rementer* Court thus addressed the issue in terms of foreseeability, affirming Rementer's conviction for third-degree murder.

¶18  There are two important distinctions between this case and *Rementer*.  First, whereas the defendant in *Rementer* did not intend to cause the traffic accident which followed his assault, Sherer's instructions to engage in self-destructive activity were intended to produce the precise injury suffered by the victim.  In admitting to the facts alleged in the Information, Sherer cannot credibly claim that he did not intend the precise injury that the victim suffered.  Sherer, impersonating a sympathetic and caring doctor, instructed the victim to cut off her nipple.  The victim's obedient actions flowed directly from Sherer's instructions.

¶19  Second, it is not necessary for us to consult the tort law concept of foreseeability in this criminal context.  Montana's criminal code provides the proper framework for analyzing the question of whether the result is within the contemplation or purpose of the defendant.  In addition to the statutes cited above, § 45-2-201(2), MCA, provides:

> If purposely or knowingly causing a result is an element of an offense and the result is not within the contemplation or purpose of the offender, either element can nevertheless be established if:
> . . .
> (b)  the result involves the same kind of harm or injury as contemplated but the precise harm or injury was different or occurred in a different way, *unless the actual result is too remote or accidental to have a bearing on the offender's liability or on the gravity of the offense*. [Emphasis supplied].

7

Given the facts in the Information, Sherer cannot argue the victim's resulting injury was not within his contemplation or purpose nor too remote or accidental to have a bearing on his liability. His intent that the injury flow from his conduct is properly inferred from the facts and circumstances connected with the offense. Section 45-2-103(3), MCA. The details of Sherer's communication with the victim reveal that the resulting injury is exactly what Sherer intended.

¶20 We thus do not agree with Sherer that exposure to liability under the aggravated assault statute would require utilizing tort proximate cause principles rather than the more direct cause required for criminal liability under our statutes. To the contrary, the statutes defining "cause" and "conduct" are broad enough to encompass Sherer's conduct as charged. "Conduct" is defined as any bodily movement or any form of communication and the accompanying mental state, and conduct is the cause of the intended injury if, without the bodily movement or communication, the intended result would not have occurred. *See* §§ 45-2-201(1)(a) and (b), 45-2-101(14) and 45-2-101(1), MCA.

¶21 The above statutes, in conjunction with the statute defining aggravated assault, do not require that the defendant personally direct force toward the victim, but specifically contemplate that any form of communication, itself, may be sufficient conduct. Neither does the statute define or require a defined parameter of proximity between the defendant and the victim, Sherer's arguments notwithstanding. Accordingly, we conclude that the statute

8

defining aggravated assault and the statutes defining cause, act and conduct, pursuant to § 45-1-102(1)(c), MCA, give fair warning that the nature of Sherer's conduct constituted the offense of aggravated assault if his conduct resulted in the intended injury.

¶22 Considering our conclusion thus far, we find little merit in Sherer's contention that this Court ought to adopt the definition of "violent offenses," as defined in Black's Law Dictionary, merely because conviction of aggravated assault may result in a defendant being required to register as a "violent offender" pursuant to § 46-23-504, MCA. The criteria for criminal causation are well-defined by Montana statute and gave fair warning that the admittedly manipulative and deceptive conduct of Sherer, in conjunction with the intended result, constituted the offense of aggravated assault. Sherer succeeded in causing the intended injury and now attempts to blame the victim for lending credence to his deceptive, illegal activity, essentially attempting to absolve himself of criminal liability because the victim "fell for it." Such argument is without merit.

¶23 Finally, Sherer cites to numerous cases from other jurisdictions for the proposition that threatening words, no matter how violent or threatening, do not by themselves constitute assault since the actor must be in a position to carry out the threat immediately and must take some affirmative step to do so. Considering the facts as alleged in the Information and the discussion thus far, we find little merit in this argument. The Information did not rely on or allege that Sherer threatened to use

9

physical force to injure the victim.  Dismissal of the aggravated assault charge in the Information could not, therefore, be predicated on this argument.

¶24  Accordingly, we hold that the District Court did not err when it denied Sherer's motion to dismiss the charge of aggravated assault.  The decision of the District Court is affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER