OPINION
MORAN, Chief Judge.
On May 2nd 2002, Defendant Donelda Burland’s two year old daughter, Jodi accompanied by her pre school age sister wandered into the William Harvey Elementary School in Ronan, Montana during the daytime. An anonymous parent found the two young children by themselves playing on the school playground and brought them to a school counselor. At the time of this incident the Defendant was an inpatient in St. Luke’s Hospital in Ro-nan, Montana having left the children to the care of her live in boy friend, Tom Evans.[1] Counselor Amy Griffin observed numerous bruises on the Jodi Burland’s face and later she and a school social worker found numerous bruises on the torso of the child giving rise to an investigation of child abuse.
An examining medical doctor was unable to find fractures or to offer his opinion to the investigators as to the cause of the bruises and lacerations on the child’s torso and head and shoulders. Further examination two days later by a physician assistant who ordered a radiological examination of the child’s arm revealed significant fractures of the child’s arm. Both the radius and ulna were fractured. The issue was then, how old were the fractures and to what decree were they evident to a layperson.
*56 Subsequently the Tribal Prosecutor filed charges alleging defendant violated CSKT Laws Codified § 2-1-509, Criminal Endangerment. § 2-1-509 provides:
“2-1-509 Criminal endangerment (1)A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment.
(2) For purposes of this Section, “Knowingly” means that the person is aware of the high probability that the conduct in which he or she is engaging, whatever that conduct may be, will cause a substantial risk of death or serious bodily injury to another.
(3) Criminal endangerment is a Class E offense over which the Tribes have concurrent jurisdiction with the State of Montana.”
CSKT Laws as Codified defines serious bodily injury at 2-1-114(38) as:
“Serious bodily harm” or “Serious bodily injury” means bodily injury which “creates a risk of death, causes serious permanent or protracted loss or impairment of the function or process of any bodily member or organ, causes permanent disfigurement, or causes a serious mental disorder.”
Prosecution alleges in its complaint as follows:
“the Defendant ... knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to her two year old daughter, Jodi Bur-land, by allowing her to receive multiple injuries, including bruises over her face and torso, bite marks on her face, abrasion to her face, and a fracture of both her radius and ulna, without taking any measures to stop the injuries or to seek medical attention for them ...”
At trial a jury returned a verdict of guilty and the trial court judge sentenced Defendant to 365 days in the tribal jail and a $5000.00 fine, The court then suspended 265 day of the jail term and the $5000.00 and defendant was ordered to meet conditions of release.
DISCUSSION
First, the Appellant argues that the Jury Verdict was not supported by substantial evidence and specifically argues that the jury verdict should be reversed “because no rational finder of fact could conclude from the evidence presented at trial” that she knew of any serious bodily injury to Jodi Burland. The overwhelming witness testimony elicited at trial was that Jodi Burland had numerous bruises, lacerations and abrasion about her face, head, and torso. Witness testimony throughout the record also reveals that Jodi exhibited serious pain and tenderness to an arm, later found to be have been fractured in two places. Appellant theorizes that there was not evidence sufficient to support a jury finding that Defendant knew the cause of the injuries. Prosecution argues that the conduct of Defendant was to completely abandon the care normally given to young children by parents complying with the CSKT Law as Codified and in doing so the Defendant created a substantial risk of death or serious bodily injury by specifically not taking measures to stop the injuries or to seek medical attention for them. The jury agreed.
The laws established by the tribal council and provided in the Confederated Salish and Kootenai Tribes, Lawrs as Codified govern this jurisdiction. The specific code section analyzed in the instant matter is a replicate of the Model Penal Code and Montana Code Annotated. In the absence of specific tribal common law' clarifying the issues appealed herein, wre will look to *57 Montana common law. Appellee argues that State v. Fuger, 170 Mont. 442, 554 P.2d 1338 (1976) and State v. Walsh, 281 Mont. 70, 931 P.2d 42 (1997) are helpful for our determination of the issue of what constitutes “serious bodily injury”. In Fuger, extensive bruising and swelling around the face and a broken nose plus a fractured palate satisfied the definition of serious bodily injury. In Walsh the loss of two teeth was sufficient to establish serious bodily harm. We hold that Jodi Bur-land suffered serious bodily injury.
In the case before us the defendant parent lived in and was capable of observing her three children to adequately care and protect them from harm throughout the relevant time frame and she failed in that duty. We hold here that parents do indeed have the duty to protect and care for their minor children living in their household and that duty entails that every effort must be expended towards creating a healthful and safe environment within the parent’s means. The defendant did fail to provide reasonable care to her child when she failed to adequately determine the source of Jodi’s injuries or to seek medical care for her, and that failure created a substantial risk of death or serious bodily injury to Jodi.
Prior to trial the court granted Defendant Burland’s Motion in Limine to exclude all expert testimony that was not listed in the prosecution’s discovery. At trial during cross examination of the defense’s witness, the physician who examined the child and failed to find that she had suffered a fractured arm, the prosecution asked questions concerning the fracture and about aging fractures specifically. The trial record fails to show defense objected to the prosecution’s cross examination of the physician evidently elicited for the purpose of establishing how old the fractures were. CSKT Laws Codified at 1-2-816, Scope of Appeal in Criminal Cases. (3) disposes of Appellant’s second argument supporting her appeal. Subsection (3) clearly delineates as follows:
“On appeal from a judgment, the Court of Appeals may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment.”
Appellant did not object on the record to the prosecution’s cross-examination of the examining physician concerning the aging of the child’s fractures. Section 1-2-816 CSKT Laws Codified is correctly cited by the Appellee mandating this court to follow its provisions. Further, Federal Rules of Civil Procedure at Rule 611(b) allows “the court to exercise its discretion, permit inquiry into additional matters as if on direct examination”. Here, the court was aware of the Motion in Limine and its own order concerning expert testimony. Without objection, the trial court did, it appears, exercise discretion and allow the prosecution’s line of questioning as a possible aid to the jury in its deliberations. We will not now disturb the trial court’s exercise of discretion in this instance. A question of when the fractures occurred was presented in direct examination of other witnesses and further clarification was sought. The defense’s own physician witness was queried on direct concerning the fractures. Appellant’s argument on this issue has not persuaded us to overturn the jury verdict.
Next, Appellant argues that when the Prosecution elicited testimony from the Defendant concerning her enrollment as a member of a federally recognized tribe, al belt not a member of the Confederated Salish and Kootenai Tribes, he then unduly prejudiced the defendant. It is well accepted law that personal and subject matter jurisdiction must be established before a court may hear the case. Lack of juris *58 diction may be raised at any time including after judgment or verdict fias been entered. The prosecution’s query as to tribal membership was proper although such matters are normally established at the beginning of the trial, We find that prejudice, if any occurred, at the trial level was the result of a prerequisite procedural step.
Finally, Appellant argues that the sentencing court disparately sentenced her to 365 days in the tribal jail and $5000.00 in fine although the court suspended 265 days of the jail time and the entire monetary fine. She argues that this constituted an abuse of discretion and therefore is the sufficient basis to overturn the jury verdict against her. Citing United States v. Bischel, 61 F.3d 1429 at 1437, she asserts that the court did not adequately assess her ability to pay a fine of $5,000.00. We disagree.
In Bischel, federal circuit held that without evidence that a defendant is being sentenced for standing trial, a trial judge has not abused discretion for imposing a sentence, which is disparate. In this matter that assertion has not been made. Judges have the discretion based on the demeanor of the defendant during trial, colloquy at sentencing and the criminal defendant’s criminal record to sentence according to their impression of the criminal defendant’s capacity for rehabilitation and his or her degree of remorse shown. In the case before us the sentence imposed is well within the discretion of the sentencing judge.
The jury verdict is affirmed.

. Appellant’s Brief, Page 3.