**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30050 |
| *Plaintiff-Appellee,* | D.C. No. 1:21-cr-00059-SPW-1 |
| v. | |
| BENITO CRAIG CASTRO, | |
| *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted March 27, 2023
Seattle, Washington

Filed June 26, 2023

Before: Jacqueline H. Nguyen and Andrew D. Hurwitz,
Circuit Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Nguyen

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel vacated Benito Castro's sentence and remanded for resentencing in a case in which Castro pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The district court increased Castro's offense level pursuant to U.S.S.G. § 2K2.1(a)(4)(A) based on a finding that Castro's prior Montana conviction for partner or family member assault ("PFMA") under Mont. Code Ann. § 45-5-206(1)(a) is a crime of violence under the Sentencing Guidelines.

Applying the categorical approach, the panel held that PFMA is not a crime of violence under the Sentencing Guidelines because the definition of "bodily injury" incorporated into PFMA includes more conduct than the "use of physical force" required by U.S.S.G. § 4B1.2(a)(1). Under Montana's unusual definition, bodily injury "includes mental illness or impairment," and Montana courts have concluded that one can cause "bodily injury" solely through the infliction of mental anguish unaccompanied by any actual or threatened physical violence. Because the court must determine whether PFMA categorically requires violent force—not whether Castro actually used it in his prior offense—the panel held that PFMA is not a crime of violence under the Sentencing Guidelines.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Russell A. Hart (argued) and Steven C. Babcock, Assistant Federal Defender; Rachel Julagay, Federal Defender, District of Montana; Federal Defenders of Montana; Billings, Montana; for Defendant-Appellant.

Tim Tatarka (argued) and Benjamin D. Hargrove, Assistant United States Attorneys; Jesse A. Laslovich, United States Attorney, District of Montana; Office of the United States Attorney; Billings, Montana; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Benito Castro pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In calculating Castro's recommended sentence, the district court increased his offense level based on a finding that Castro had previously committed a crime of violence. Castro contends that the crime in question, a Montana conviction for partner or family member assault ("PFMA"), Mont. Code Ann. § 45-5-206(1)(a), is not a crime of violence under the federal Sentencing Guidelines. We agree.

Montana's PFMA statute penalizes intentionally causing "bodily injury." *Id.* While bodily injury may sound like it entails "force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010), in Montana that is not necessarily true. Under that state's unusual definition, bodily injury "includes mental illness or impairment." Mont. Code Ann. § 45-2-101(5). Montana courts have concluded that one can cause "bodily

injury" solely through the infliction of mental anguish unaccompanied by any actual or threatened physical violence. Because we must determine whether PFMA categorically requires violent force—not whether Castro actually used it in his prior offense—we hold that PFMA is not a crime of violence under the Sentencing Guidelines. Therefore, we vacate Castro's sentence and remand for resentencing.

## I.

In May 2021, Castro and his girlfriend went hiking in Bighorn Canyon National Recreation Area. Park rangers on patrol at the trailhead spotted drug paraphernalia in Castro's vehicle. The rangers intercepted Castro and his girlfriend at the end of the trail and accompanied them back to the vehicle. Castro initially denied possessing a firearm but later admitted to the rangers that he had a firearm in his front shirt pocket and was on probation for a felony PFMA conviction. The rangers handcuffed Castro and seized the firearm—a Glock pistol. After issuing Castro a citation for 2.53 grams of marijuana and an empty beer bottle that they found in his vehicle, the rangers released him.

A grand jury charged Castro with knowingly possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Castro pled guilty.

At sentencing, the parties disputed whether one of Castro's 2013 PFMA convictions qualifies as a "crime of violence" under the Sentencing Guidelines.[1] The district

---

[1] Castro had three prior felony PFMA convictions—two in 2013 and one in 2017. The government conceded that only one of the convictions could qualify as a crime of violence because the charging documents in

court ruled that the PFMA conviction was a crime of violence, which increased Castro's offense level from 14 to 20 and his recommended sentencing range from 27–33 months to 46–57 months. *See* U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(4)(A), (6)(A) (U.S. Sent'g Comm'n 2016). The district court sentenced Castro to a prison term of 50 months.

We have jurisdiction under 28 U.S.C. § 1291. Whether a prior offense constitutes a crime of violence under the Sentencing Guidelines is a legal question that we review de novo. *See United States v. Perez*, 932 F.3d 782, 784 (9th Cir. 2019).

## II.

For unlawfully possessing a firearm, the Sentencing Guidelines set a base offense level of 14 if the defendant was a "prohibited person"—here, someone previously convicted of a felony—at the time of the offense. U.S.S.G. § 2K2.1(a)(6)(A) & cmt. n.3. The base offense level increases to 20 if the prior felony was a "crime of violence." *Id.* § 2K2.1(a)(4)(A).

The Guidelines define a crime of violence in two ways. In the so-called enumerated offenses clause, the Guidelines list several offenses that constitute a crime of violence. *See id.* § 4B1.2(a)(2). But if the crime at issue is not among them, the elements clause defines "crime of violence" more

---

the others didn't specify which subsection of the PFMA statute Castro violated. One subsection allows for a conviction based on negligent conduct, *see* Mont. Code Ann. § 45-5-206(1)(b), which is an insufficient mens rea. *See Borden v. United States*, 141 S. Ct. 1817, 1824 (2021) ("The phrase 'crime of violence' . . . 'suggests a category of violent, active crimes that cannot be said naturally to include' negligent offenses." (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004))).

generally as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1).

To determine whether a felony is a crime of violence, we apply the categorical approach. *United States v. Prigan*, 8 F.4th 1115, 1118–19 (9th Cir. 2021). This requires, for better or worse, that we ignore what actually occurred during the defendant's prior felony; instead, we consider only whether the prior felony's elements cover conduct that "sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions."[2] *Id.* at 1119. If so, then the prior felony is not categorically a crime of violence and cannot be used to increase the base offense level under § 2K2.1(a). *See id.*

We begin by analyzing the state statute's text, and we may also consider state court interpretations of the statute. *See United States v. Baldon*, 956 F.3d 1115, 1123 (9th Cir. 2020). Montana defines PFMA in relevant part as "purposely or knowingly caus[ing] bodily injury to a partner or family member."[3] Mont. Code Ann. § 45-5-206(1)(a).

---

[2] The Supreme Court mandates this mode of analysis, but other federal courts "hate the categorical approach," as the district court put it. *See, e.g.*, *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) (joining "the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach"). It frequently "produces absurd results," *id.*, and this case is illustrative. While we conclude that PFMA violations need not be violent, in the one at issue, Castro "grabbed [the victim] by the neck" and "then threw her to the ground and hit her face into a glass door."

[3] Castro contends that we cannot cabin our analysis to the subsection of the PFMA statute under which he was charged because the statute isn't

Bodily injury, in turn, "means physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." *Id.* § 45-2-101(5).

## A.

The government does not contend that PFMA is a categorical match with one of the offenses enumerated in § 4B1.2(a)(2), and for good reason. The closest analogue to PFMA among the enumerated offenses is aggravated assault. The generic definition of aggravated assault covers bodily injury caused "'under circumstances manifesting extreme indifference to the value of human life' or with a deadly weapon." *United States v. Vederoff*, 914 F.3d 1238, 1245 (9th Cir. 2019) (quoting Model Penal Code § 211.1(2) (Am. L. Inst. 1985)). PFMA, which requires neither serious bodily injury nor use of a weapon, *see State v. Brown*, 781 P.2d 281, 283 (Mont. 1989), covers a wide spectrum of physically injurious conduct that generic aggravated assault does not, *see State v. Goodwin*, 679 P.2d 231, 233 (Mont. 1984) (explaining that "bodily injury" does not require substantial risk of death and involves less substantial pain, risk, disfigurement, or impairment than the "serious bodily

---

"divisible"—*i.e.*, one that "lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" *Descamps v. United States*, 570 U.S. 254, 264 (2013) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). To the contrary, "each subsection of the statute involve[s] unique mens rea and conduct elements." *United States v. Tagatac*, 36 F.4th 1000, 1003 (9th Cir. 2022). For that reason, the Montana Supreme Court held that jury instructions combining the elements of subsections (1)(a) and (1)(c) improperly amended an information that charged the defendant only under subsection (1)(a). *See State v. Spotted Eagle*, 243 P.3d 402, 404 (Mont. 2010) ("Changing the essential elements changed the nature and substance of the charge . . . .").

injury" necessary under Montana's aggravated assault statute).

## B.

We turn then to the elements clause, which defines "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."   U.S.S.G. § 4B1.2(a)(1). "Because this language is identical to that interpreted by the Supreme Court in *Johnson*, we apply *Johnson*'s definition of 'physical force': '*violent* force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Fitzgerald*, 935 F.3d 814, 816 (9th Cir. 2019) (internal citation omitted) (quoting *Johnson*, 559 U.S. at 140).  Although violent force "need not cause pain or injury or even be prolonged," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), it "requires, at the very least, more than 'a mere unwanted touching,'" *Fitzgerald*, 935 F.3d at 817 (quoting *Johnson*, 559 U.S. at 142).

The definition of "bodily injury" incorporated into PFMA includes more conduct than the "use of physical force" required by § 4B1.2(a)(1).  We must presume that Castro's PFMA conviction "rested upon nothing more than the least of the acts criminalized," *Baldon*, 956 F.3d at 1125 (cleaned up) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)), which is intentionally causing "mental illness or impairment" to a partner or family member, Mont. Code Ann. §§ 45-2-101(5), 45-5-206(1)(a).

While mental illness or impairment can be caused by threats of violent force, it can also be caused by less forceful means, such as "subjecting someone to a public tirade of insults or emotional abuse." *United States v. Ross*, No. CR 13-29-BLG-BMM, 2017 WL 1288425, at *4 (D. Mont. Apr.

6, 2017).  More importantly, a mere *threat* of force—violent or otherwise—is not an element of PFMA subsection (1)(a), which requires that the defendant actually inflict physical or mental bodily injury.   Subsection (1)(c), in contrast, penalizes "caus[ing] reasonable apprehension of bodily injury." Mont. Code Ann. § 45-5-206(1)(c).  Thus, even if threatened violent force causes mental injury, subsection (1)(a) is not a crime that "has as an element the . . . threatened use of physical force."   U.S.S.G. § 4B1.2(a)(1).

**1.**

In arguing that Montana's definition of bodily injury necessarily entails violent force, the government relies on two inapposite cases.

**a.**

*United States v. Castleman* did not involve the Sentencing Guidelines, but rather a federal statute that penalized "the possession of firearms by anyone convicted of 'a misdemeanor crime of domestic violence.'"  572 U.S. 157, 159 (2014) (quoting 18 U.S.C. § 922(g)(9)).   The Supreme Court held that a "misdemeanor crime of domestic violence" requires less force than *Johnson* requires of a violent felony.  *See id.* at 163 ("[A]t common law, the element of force in the crime of battery was 'satisfied by even the slightest offensive touching.' . . . [T]he common-law meaning of 'force' fits perfectly [here]." (quoting *Johnson*, 559 U.S. at 139)).  Thus, insofar as *Castleman* concerns "the *degree* [of force] required," it is unilluminating as to § 4B1.2(a). *Amaya v. Garland*, 15 F.4th 976, 981 n.4 (9th Cir. 2021). *Castleman* expressly declined to decide whether a state statute defining bodily injury

"necessitate[d] violent force[] under *Johnson*'s definition of that phrase."[4]  *Castleman*, 572 U.S. at 170.

### b.

Similarly unhelpful is *United States v. Calvillo-Palacios*, which explained that "in the context of assault statutes, bodily injury entails the use of violent, physical force."  860 F.3d 1285, 1291 (9th Cir. 2017).  *Calvillo-Palacios* concerned *aggravated* assault statutes that require *physical* bodily injury, such as the Texas statute at issue there.  *See* Tex. Penal Code Ann. §§ 22.02(a)(1) (defining aggravated assault to include "serious bodily injury"), 1.07(8) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition").  If anything, *Calvillo-Palacios* undermines the government's position insofar as it suggests that causing "impairment of physical condition" may not require violent force.  *See Calvillo-Palacios*, 860 F.3d at

---

[4] The government argues that the Tennessee statute at issue in *Castleman* employed a definition of bodily injury similar to the Montana statute here, thus showing that PFMA "require[s] at least the use of force sufficient to meet the standard of common-law battery."  It is unclear that Tennessee's definition of bodily injury, like Montana's, includes emotional and psychological harm.  While the Tennessee definition includes "impairment of the function of a bodily member, organ, or mental faculty," *Castleman*, 572 U.S. at 170 (quoting Tenn. Code Ann. § 39-11-106(a)(2) (1997)), it may be limited to physical brain damage rather than mental or emotional distress.  *See State v. Kissinger*, 922 S.W.2d 482, 488 n.9 (Tenn. 1996) (holding that "serious psychological injury" does not constitute "bodily injury" for sentencing purposes); *see also Ivey v. Trans Glob. Gas & Oil*, 3 S.W.3d 441, 447 (Tenn. 1999) (describing "two basic types of [mental] injuries": one "result[ing] from physical trauma to the brain," and one "involv[ing] a mental or emotional disorder that results from a non-physical injury"); Tenn. Code Ann. § 50–6-102(15) (distinguishing "a loss of mental faculties" from "a mental or behavioral disorder").  Because *Johnson* requires more force than common law battery, however, we need not resolve the issue.

1292 (assuming that "'impairment of physical condition[]' could occur without violent, physical force" because the crime at issue required "*serious* bodily injury").  Montana, like Texas, defines bodily injury to include impairment of physical condition.  *See* Mont. Code Ann. § 45-2-101(5).

**2.**

As the government points out, there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  But the government's reliance on this principle is misplaced.

To begin with, it is far from clear that the generic offense of simple battery—of which PFMA subsection (1)(a) is a species[5]—is a crime of violence under § 4B1.2(a).  Common law battery, which is "satisfied by even the slightest offensive touching," does not satisfy that definition. *Johnson*, 559 U.S. at 139; *see Fitzgerald*, 935 F.3d at 816–17.  Moreover, § 4B1.2(a)'s enumerated offenses clause omits simple assault while including aggravated assault, which involves more severe injury.  For the sake of argument, however, we will assume that the generic crime of simple battery satisfies the elements clause.

To show a "realistic probability" that Montana would apply PFMA subsection (1)(a) to conduct outside the generic definition of simple battery, Castro "has two paths."

---

[5] Normally, battery requires a "physical injury or offensive touching" whereas assault "needs no such physical contact."  2 Wayne R. LaFave, *Substantive Criminal Law* § 16.1(a) (3d ed. 2022).  PFMA's three subsections, like many assault statutes, combine elements of both.  *See id.* § 16.3 n.3 (noting that "a statute labelled 'assault' may in addition cover conduct of the battery type").

*Baldon*, 956 F.3d at 1124. He "may simply 'rely on the statutory language to establish the statute as overly inclusive.'" *Id.* (quoting *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015)). After all, "if a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists." *Id.* (quoting *Chavez-Solis*, 803 F.3d at 1009). Alternatively, Castro can "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193). In the end, he "succeeds on both paths." *Id.*

**a.**

To determine what conduct generic battery covers, we "ordinarily survey a number of sources—including state statutes, the Model Penal Code, federal law, and criminal treatises." *Alfred v. Garland*, 64 F.4th 1025, 1037 (9th Cir. 2023) (en banc) (cleaned up) (quoting *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1084 (9th Cir. 2015)). Most simple battery statutes (whether denominated assault or battery) encompass intentionally causing bodily injury. *See, e.g.*, Model Penal Code § 211.1(1)(a) (defining simple assault in part as "purposely, knowingly or recklessly caus[ing] bodily injury to another").

Of the states that require a showing of bodily injury, however, the vast majority do not include mental injury. *See* 2 LaFave, *supra*, § 16.2(a) ("The modern approach . . . is to limit battery to instances of physical injury . . . ."); Francis X. Shen, *Mind, Body, and the Criminal Law*, 97 Minn. L. Rev. 2036, 2048 (2013) (surveying state definitions and concluding that "with only a few exceptions, mental injury is not explicitly included under the bodily injury umbrella").

About half the states define bodily or physical injury in terms of pain or other physical impairments,**6** and some limit bodily injury to physical injury through case law.**7** Several other states adhere to the common law definition of battery, requiring minimal, non-injurious physical force, which does not qualify as a crime of violence under *Johnson*.**8**

Montana added its definition of "bodily injury" in 1973, when the state "replaced its former common-law based criminal code with a modified version of the Model Penal Code." *State v. Mills*, 428 P.3d 834, 840 (Mont. 2018).

---

6 *See* Ala. Code § 13A-1-2(12); Alaska Stat. § 11.81.900(b)(48); Ariz. Rev. Stat. Ann. § 13-105(33); Ark. Code Ann. § 5-1-102(14); Conn. Gen. Stat. § 53a-3(3); Del. Code Ann. tit. 11, § 222(26); Haw. Rev. Stat. § 707-700; Ky. Rev. Stat. Ann. § 500.080(15); Me. Rev. Stat. tit. 17-A, § 2(5); Minn. Stat. § 609.02(7); Mo. Rev. Stat. § 556.061(36); Neb. Rev. Stat. § 28-109(4); N.J. Stat. Ann. § 2C:11-1(a); N.Y. Penal Law § 10.00(9); N.D. Cent. Code § 12.1-01-04(4); Ohio Rev. Code Ann. § 2901.01(A)(3) & cmt.; Or. Rev. Stat. § 161.015(7); 18 Pa. Consol. Stat. § 2301; Tex. Penal Code Ann. § 1.07(a)(8); Utah Code Ann. § 76-1-101.5(4); Vt. Stat. Ann. tit. 13, § 1021(a)(1); Wis. Stat. § 939.22(4).

7 *See State v. Randle*, 781 S.E.2d 781, 784 (Ga. 2016); *People v. Mays*, 437 N.E.2d 633, 635–36 (Ill. 1982); *State v. Phillips*, 479 P.3d 176, 198 (Kan. 2021); *Commonwealth v. Gorassi*, 733 N.E.2d 106, 110 (Mass. 2000); *Murrell v. State*, 655 So. 2d 881, 884 (Miss. 1995); *State v. Wilkerson*, 738 S.E.2d 32, 38 (W. Va. 2013).

8 *See* Ind. Code § 35-42-2-1(c); Md. Code Ann., Crim. Law §§ 3-201, 3-203; N.M. Stat. Ann. § 30-3-4; Wash. Rev. Code § 9A.36.041; *People v. Rocha*, 479 P.2d 372, 377 n.12 (Cal. 1971); *State v. Schenck*, 513 So. 2d 1159, 1165 (La. 1987); *People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004); *Hobbs v. State*, 251 P.3d 177, 179 (Nev. 2011); *State v. West*, 554 S.E.2d 837, 840 (N.C. Ct. App. 2001); *Steele v. State*, 778 P.2d 929, 931 (Okla. Crim. App. 1989); *State v. Albanese*, 970 A.2d 1215, 1221 (R.I. 2009); *Kelley v. Commonwealth*, 822 S.E.2d 375, 379 (Va. Ct. App. 2019).

Montana's definition tracks the Model Penal Code's, but only to a point. Both begin with "physical pain, illness or . . . impairment of physical condition," Model Penal Code § 210.0(2) (1962), but the Model Penal Code's definition ends there, whereas Montana's "includes mental illness or impairment," Mont. Code Ann. § 45-2-101(5). Thus, Montana "explicitly defines [bodily injury] more broadly than the generic definition." *Baldon*, 956 F.3d at 1124 (quoting *Chavez-Solis*, 803 F.3d at 1009).

It would be one thing if Montana's bodily injury statute matched the Model Penal Code and excluded mental injury. Castro would then need to show that physical bodily injury can occur without violent force. He might argue, as did Calvillo-Palacios, that "impairment of physical condition" can be caused nonviolently. *See Calvillo-Palacios*, 860 F.3d at 1292. While Montana courts theoretically could interpret the statutory language that broadly—"physical condition" can refer to physical strength, *see, e.g.*, *In good physical condition*, Merriam-Webster Dictionary, https://www.merri am-webster.com/dictionary/in%20good%20physical%20co ndition [https://perma.cc/E6F8-TG55]—Castro would need to show a realistic probability that they would do so.

In short, PFMA subsection (1)(a) expressly deviates from the generic crime of battery by allowing the harm to be mental rather than physical. Thus, we need not speculate whether Montana courts would stretch the statute beyond the generic definition. *See Baldon*, 956 F.3d at 1124.

**b.**

We also need not speculate because Castro identifies at least two cases in which Montana courts have found that psychological harm constitutes bodily injury.

**i.**

In the first case (really, a pair of cases), the Montana Supreme Court considered the propriety of two civil commitment orders, which turned on whether the committed individual presented a substantial risk of "serious bodily injury . . . to [himself] or others." Mont. Code Ann. § 46-14-301(3)(a). The civil commitment statute employs the criminal definition of "serious bodily injury," *see State v. Cooney* ("*Cooney I*"), 963 P.2d 1272, 1274 (Mont. 1998), which provides that serious bodily injury "includes serious mental illness or impairment," Mont. Code Ann. § 45-2-101(66)(b). Thus, both "bodily injury" and "serious bodily injury" include some degree of "mental illness or impairment."

In *Cooney I*, the trial court found that a convicted stalker (Cooney) "was capable of acting upon his delusional beliefs, creating a substantial risk of serious bodily injury to his victim, including bodily injury in the form of serious mental illness or impairment." *Cooney I*, 963 P.2d at 1274. On appeal, Cooney contended that the victim's "emotional anguish or emotional trauma" from his past stalking behavior did not cause her "a diagnosable 'serious mental illness'" and that even if he continued to stalk her upon release, as was likely, that was "not sufficient to show that his victim [was] at risk for developing a 'serious mental illness.'" *Id.* The Montana Supreme Court affirmed the trial court, concluding that "Cooney's stalking activities . . . ha[d] already caused [the victim] a great deal of emotional anguish related to fears of her own and her family's safety and may have already resulted in a diagnosable psychiatric condition for her." *Id.*

Nearly two years later, the state trial court found that Cooney still presented "a substantial risk of serious mental harm to the young woman whom he had stalked" and ordered his continued commitment. *State v. Cooney* ("*Cooney II*"), 1 P.3d 956, 957 (Mont. 2000). The Montana Supreme Court once again upheld the commitment order, finding that "Cooney was likely to attempt to contact his stalking victim if he was released" and that the victim feared "Cooney would be able to locate her and members of her family and would continue stalking her" despite her "precautions to seclude herself." *Id.*

The government speculates that "the victim's mental distress 'stemmed from apprehension of *physical* injury if she did not respond to the defendant's stalking'" (quoting *United States v. DeFrance*, 577 F. Supp. 3d 1085, 1097 (D. Mont. 2021)), but the reason for the victim's apprehension was irrelevant to the Montana Supreme Court's analysis. The court did not find that Cooney presented a risk of causing physical injury.**[9]** The court's holding that "Cooney posed a substantial risk of serious bodily injury or death to himself or others" rested on its finding that "Cooney presented a substantial risk of causing serious mental impairment in" his stalking victim. *Cooney II*, 1 P.3d at 958.

---

[9] At the criminal trial, the victim "testified that she was apprehensive that Cooney might physically injure her because Cooney gets mad when she does not respond," *State v. Cooney*, 894 P.2d 303, 305 (Mont. 1995), but there was no evidence of any express or implied threats of physical violence. Rather, he "expressed his love for [the victim] with unusual forms of expression, such as 'I wuv U, I wuv U,'" and asked the victim if she would like to have sex. *Id.* Like Cooney's civil commitment, his criminal conviction for stalking did not rest on any threat of physical injury. The trial court found—and the state supreme court affirmed—that "Cooney's persistence, despite rejection, caused [the victim] substantial emotional distress." *Id.*

Montana's statute defining "bodily injury" describes symptoms, not their causes, so the reason for the court's mental impairment finding made no difference—just as it makes no difference under PFMA subsection (1)(a).

### ii.

In the second case, *People v. Shen*, No. DC 20-1260 (Mont. Dist. Ct. filed Sept. 21, 2020), Shen moved to dismiss five counts of felony sexual assault. Montana's sexual assault statute imposes misdemeanor punishment for nonconsensual "sexual contact," Mont. Code Ann. § 45-5-502(1), which requires only a "touching," *id.* § 45-2-101(67). However, the statute elevates the offense to a felony "if the offender inflicts bodily injury." *Id.* § 45-5-502(3). In each of the five sexual assault counts, the state charged Shen with "caus[ing] bodily injury in that [the] victim suffered . . . mental impairment in the form of emotional anguish." Second Amended Information at 2–4, *Shen*, No. DC 20-1260, Dkt. No. 25.

Shen argued that emotional anguish is insufficient to constitute "bodily injury." *See* Order Denying Defendant's Motion to Dismiss at 3, *Shen*, No. DC 20-1260, Dkt. No. 34. The trial court disagreed and denied the motion to dismiss:

> [T]he plain language of bodily injury, which includes simply "mental illness or impairment" does not require permanent, protracted, or any other "serious" consequence, far less than was required in *Cooney*.
>
> Here, a common-sense reading of the Second Amended Information and Affidavit establishes probable cause that Shen inflicted

> bodily injury through mental impairment on the victims of the Sexual Assault Counts. Shen allegedly engaged in conduct with each victim that caused them considerable emotional anguish. This is sufficient to meet mental impairment as a factual basis and allow a factual finding by the jury.

*Id.* at 5.

While the unreviewed order of a single trial court is obviously not conclusive as to state law, it is entitled to at least "some weight." *King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 160–61 (1948). *Shen*'s reasoning is a straightforward application of *Cooney I* and *II* and underscores that bodily injury in Montana does not require violent force.

## III.

Castro's conviction under PFMA subsection (1)(a) required nothing more than causing mental anguish through nonviolent conduct. Because his offense was not categorically a crime of violence under § 4B1.2(a), the district court erred in calculating the Sentencing Guidelines range. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). We therefore vacate Castro's sentence and remand for resentencing.

**VACATED and REMANDED.**