**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-2409 |
| *Plaintiff - Appellee*, | D.C. No. 9:21-cr-00029-DLC-1 |
| v. | |
| MICHAEL BLAKE DEFRANCE, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted September 12, 2024
Seattle, Washington

Filed December 30, 2024

Before: Morgan B. Christen and Jennifer Sung, Circuit
Judges, and Jed S. Rakoff, District Judge.[*]

Opinion by Judge Christen;
Concurrence by Judge Christen;
Concurrence by Judge Rakoff

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel reversed Michael Blake DeFrance's conviction for violating 18 U.S.C. § 922(g)(9), which forbids the possession of firearms by anyone convicted of a "misdemeanor crime of domestic violence"; vacated his sentence; and remanded.

The predicate offense for DeFrance's § 922(g)(9) indictment was his prior conviction for assaulting his girlfriend in violation of Montana Code Annotated section 45-5-206(1)(a), a misdemeanor.

Applying the categorical approach, the panel held that because section 45-206(1)(a) can be violated by inflicting emotional distress rather than physical injury, it does not "ha[ve], as an element, the use or attempted use of physical force," 18 U.S.C. § 922(a)(3)(A)(ii). Accordingly, a conviction for violating section 45-206(1)(a) does not quality as a "misdemeanor crime of violence" under § 922(g)(9).

The panel addressed other issues in a concurrently filed memorandum disposition.

Concurring, Judge Christen wrote that there is little doubt that when Congress enacted § 922(g)(9), it intended to keep firearms out of the hands of misdemeanor domestic

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

abusers, but that the result in this case is dictated by faithful application of controlling precedent.

Concurring, District Judge Rakoff wrote that he continues to be troubled by the so-called "categorical approach," whose counter-intuitive results Congress never intended. He joined the growing number of lower-court judges and Supreme Court justices who have called into question its propriety.

---

**COUNSEL**

Tim A. Tatarka (argued) and Timothy J. Racicot, Assistant United States Attorneys, United States Department of Justice, Office of the United States Attorney, Billings, Montana; Jennifer S. Clark, Assistant United States Attorney; Jesse A. Laslovich, United States Attorney; United States Department of Justice, Office of the United States Attorney, Missoula, Montana; for Plaintiff-Appellee.

Michael Donahoe (argued), Assistant Federal Public Defender; Rachel Julagay, Federal Defender, District of Montana; Federal Defenders of Montana, Helena, Montana; for Defendant-Appellant.

**OPINION**

CHRISTEN, Circuit Judge:

We address whether a conviction for partner or family member assault (PFMA) under Montana Code Annotated section 45-5-206(1)(a) qualifies as a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9). Because Montana's PFMA statute can be violated by inflicting emotional rather than physical injury, we conclude that it does not "ha[ve], as an element, the use or attempted use of physical force."    18 U.S.C. § 921(a)(33)(A)(ii). Accordingly, a conviction for violating this statute does not qualify as a "misdemeanor crime of domestic violence," and Appellant's § 922(g)(9) conviction must be reversed.

I.

In 2013, Appellant Michael Blake DeFrance pleaded guilty to assaulting Jermain Charlo, his girlfriend, in violation of Montana Code Annotated section 45-5-206(1)(a), a misdemeanor.[1]  Under section 45-5-206(1)(a), "[a] person commits the offense of partner or family member assault if the person . . . purposely or knowingly causes bodily injury to a partner or family member."  Mont. Code Ann. § 45-5-206(1)(a).  "'Bodily injury' means physical pain, illness, or an impairment of physical condition and

---

[1] The district court concluded that section 45-5-206 is divisible and that DeFrance was convicted under section 45-5-206(1)(a).  *See United States v. DeFrance*, 577 F. Supp. 3d 1085, 1095 n.2 (D. Mont. 2021). Neither party challenges that conclusion on appeal or contends that section 45-5-206(1)(a) is divisible in any respect relevant to our analysis. We therefore do not apply the modified categorical approach to DeFrance's section 45-5-206(1)(a) conviction.  *See Descamps v. United States*, 570 U.S. 254, 278 (2013).

includes mental illness or impairment." *Id.* § 45-2-101(5). The language of these two provisions is the same today as it was in 2013, when DeFrance assaulted Charlo.

In 2018, law enforcement officers found DeFrance in possession of three firearms. A federal grand jury subsequently indicted DeFrance on one count of violating 18 U.S.C. § 922(g)(9), which forbids the possession of firearms by anyone convicted of a "misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9).[2] Section 921(a)(33)(A), in turn, defines "misdemeanor crime of domestic violence" as "an offense that . . . has, as an element, the use or attempted use of physical force." *Id.* § 921(a)(33)(A).[3]

---

[2] Section 922(g) states:

> It shall be unlawful for any person . . . (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

[3] Section 921(a)(33)(A) states:

> Except as provided in subparagraphs (B) and (C), the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal, State, Tribal, or local law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with

DeFrance moved to dismiss the indictment, arguing that section 45-5-206(1)(a) "can be committed without the use or attempted use of physical force" and, therefore, a conviction under this statute does not qualify as a "misdemeanor crime of domestic violence" for purposes of § 922(g)(9). The district court denied the motion. *See DeFrance*, 577 F. Supp. 3d at 1093–98; *see also United States v. DeFrance*, 2023 WL 4531828, at *9 (D. Mont. July 13, 2023) (denying DeFrance's motion for a new trial). Following his conviction, DeFrance timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo DeFrance's argument that "the use or attempted use of physical force" is not an element of section 45-5-206(1)(a). *See United States v. Campbell*, 42 F.3d 1199, 1203 (9th Cir. 1994) ("We review legal questions *de novo*.").

## II.

To determine whether a conviction under section 45-5-206(1)(a) qualifies as a "misdemeanor crime of domestic violence" for purposes of §§ 921(a)(33)(A) and 922(g)(9), we apply the categorical approach. *See United States v. Castleman*, 572 U.S. 157, 168 (2014) (citing *Taylor v.*

---

whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

18 U.S.C. § 921(a)(33)(A). Congress added "a person who has a current or recent former dating relationship with the victim" in 2022, after DeFrance's 2013 domestic violence conviction, *see* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332 (2022), but that change is not material to the question at issue in this opinion.

*United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005)).  "This requires, for better or worse, that we ignore what actually occurred during the defendant's prior [offense]; instead, we consider only whether the prior [offense's] elements cover conduct that 'sweeps more broadly than the conduct covered by § [921(a)(33)(A)'s misdemeanor crime of domestic violence] definition[].'"  *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023) (quoting *United States v. Prigan*, 8 F.4th 1115, 1119 (9th Cir. 2021)).  Specifically, we consider whether DeFrance's conviction "necessarily 'ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.'"  *Castleman*, 572 U.S. at 168 (quoting 18 U.S.C. § 921(a)(33)(A)).

While no Montana court has squarely addressed whether section 45-5-206(1)(a) requires the use of physical force, both Ninth Circuit case law construing this statute and Montana Supreme Court decisions construing related assault statutes support DeFrance's contention that section 45-5-206(1)(a) does not "ha[ve], as an element, the use or attempted use of physical force."  18 U.S.C. § 921(a)(33)(A)(ii).

We recognized in *Castro* that a person can violate section 45-5-206(1)(a) by verbal conduct alone—e.g., by "subjecting someone to a public tirade of insults or emotional abuse."  71 F.4th at 739 (quoting *United States v. Ross*, 2017 WL 1288425, at *4 (D. Mont. Apr. 6, 2017)).  *Castro* relied on *Ross*, which in turn relied in part on the Montana Supreme Court's decision in *State v. Sherer*, 60 P.3d 1010 (Mont. 2002).  There, the defendant was charged with aggravated assault, which requires that the defendant "purposefully or knowingly cause[] serious bodily injury to another."  *Id.* at 1012 (quoting Mont. Code Ann. § 45-5-

202(1)). Posing as a doctor, the defendant in *Sherer* telephoned a woman and convinced her to cut off her nipple. *Id.* at 1011. The Montana Supreme Court held that the defendant's conduct, which was entirely verbal, was sufficient to sustain a conviction because Montana's assault statutes "do not require that the defendant personally direct force toward the victim, but specifically contemplate that any form of communication, itself, may be sufficient conduct." *Id.* at 1013.

*Sherer* establishes that the use of words or other forms of communication can constitute the indirect use of physical force under Montana law, but we also consider whether the "bodily injury" required to violate the Montana statute *necessarily* requires the use of physical force. *See Castleman*, 572 U.S. at 169–71; *Castro,* 71 F.4th at 737, 742–44. *Castro* held that a person can violate section 45-5-206(1)(a) by inflicting emotional, rather than physical, injury on the victim. 71 F.4th at 737, 742–44. Unlike most battery statutes, which require physical injury,[4] Montana defines "bodily injury" to include "mental illness or impairment." Mont. Code Ann. § 45-2-101(5). And "Montana courts have concluded that one can cause 'bodily injury' solely through the infliction of mental anguish." *Castro*, 71 F.4th at 737; *see, e.g.*, *State v. Cooney*, 963 P.2d 1272, 1274 (Mont. 1998) (holding that "emotional anguish" qualifies as "serious bodily injury" under section 46-14-301(3)(a) and former section 45-2-101(64)(b), now codified

---

[4] *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.2(a) (3d ed. 2023) ("The modern approach, as reflected in the Model Penal Code, is to limit battery to instances of physical injury . . . ." (footnote omitted)); Francis X. Shen, *Mind, Body, and the Criminal Law*, 97 Minn. L. Rev. 2036, 2112 (2013) ("Conventional wisdom is that . . . bodily injury . . . does not include pure 'mental' injury.").

at 45-2-101(66)(b)); *State v. Cooney*, 1 P.3d 956, 958 (Mont. 2000) (holding that emotional trauma qualifies as "serious bodily injury" under section 46-14-302(6)(b) and former section 45-2-101(65), now codified at 45-2-101(66)); *State v. Shen*, No. DC 20-1260, slip op. at 5 (Mont. Dist. Ct. Yellowstone Cnty. May 27, 2021) (holding that "considerable emotional anguish" qualifies as "bodily injury" under sections 45-5-502 and 45-2-101(5)).

Taken together, these authorities show that a person can violate section 45-5-206(1)(a) through any form of communication that inflicts bodily injury in the form of emotional anguish. The infliction of emotional anguish does not require the use of physical force as that term is defined by federal law. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) (holding that physical force "refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force").[5] We recognize that the Supreme Court held in *Castleman* that a "misdemeanor crime of domestic violence" requires only the force necessary to commit common law battery, and that this is significantly less force than *Johnson* required for the violent felony standard at issue in *Castro*. *See* 572 U.S. at 163. Nevertheless, we are bound by our precedent in *Castro*, which observed that Montana's PFMA statute "explicitly defines [bodily injury] more broadly than the generic definition." 71 F.4th at 741–42 (reasoning subsection (1)(a) "deviates from the generic

---

[5] Although our case law holds that it is impossible to intentionally or knowingly cause bodily injury without the use of physical force, *see United States v. Calvillo-Palacios*, 860 F.3d 1285, 1290–91 (9th Cir. 2017), we have not addressed a state law that defines "bodily injury" so broadly that it includes mere emotional injury, as Montana's PFMA statute does.

crime of battery by allowing the harm to be mental rather than physical").  Thus, we are compelled to conclude that section 45-5-206(1)(a) does not "ha[ve], as an element, the use or attempted use of physical force" within the meaning of § 921(a)(33)(A)(ii).[6]

## III.

The government points to case law suggesting that DeFrance is required to show "a realistic probability, not a theoretical possibility," that Montana would apply section 45-5-206(1)(a) in a case that does not involve the use of physical force.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).[7]  Assuming this principle applies here,

---

[6] At oral argument, the government argued that Montana Criminal Law Commission commentary demonstrates that Montana assault requires the use of physical force.  *See* Mont. Code Ann. § 45-5-201 Criminal Law Commission's comment (noting that "'battery,' i.e., actual bodily injury or contact of some kind, is an essential element of the offense of assault in all instances except those" in which the offender causes a reasonable apprehension of bodily injury).  We disagree.  Because the commentary uses the disjunctive "actual bodily injury *or* contact of some kind," and Montana defines bodily injury to include mental illness or impairment, the commentary does not establish that physical force is required.

[7] In *Duenas-Alvarez*, the Supreme Court held that an offender asserting that a state offense is broader than its federal counterpart must demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  549 U.S. at 193.  To make that showing, an offender "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."  *Id.*; *accord Moncrieffe v. Holder*, 569 U.S. 184, 191, 205–06 (2013).  But recently, in *United States v. Taylor*, 596 U.S. 845, 857–58 (2022), the Court suggested that the realistic

DeFrance can make the required showing in either of two ways. First, "if 'a state statute explicitly defines a crime more broadly than the generic definition, no legal imagination is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime.'" *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009–10 (9th Cir. 2015) (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018)). "[W]hen a 'state statute's greater breadth is evident from its text,' a petitioner need not point

---

probability standard may have no application in a case, such as this one, in which the inquiry posed by federal law is whether a state law has the use of force as an element. The Court stated that the government's invocation of the realistic probability standard could not

> be squared with the statute's terms. To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Id.* The "crime of violence" provision at issue in *Taylor*, 18 U.S.C. § 924(c)(3)(A), is similar to the provision at issue here. *Compare* 18 U.S.C. § 924(c)(3)(A) ("For purposes of this subsection the term 'crime of violence' means an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."), *with id.* § 921(a)(33)(A) ("[T]he term 'misdemeanor crime of domestic violence' means an offense that . . . is a misdemeanor under Federal, State, Tribal, or local law; and . . . has, as an element, the use or attempted use of physical force . . . ."). After *Taylor*, it is not clear what remains of the realistic probability standard.

to an actual case applying the statute of conviction in a nongeneric manner." *Id.* at 1010 (quoting *Grisel*, 488 F.3d at 850). Alternatively, where a statute's overbreadth is not evident from its text, a defendant "can show the requisite 'realistic probability' of prosecution for conduct that falls outside the generic definition" by "'point[ing] to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.'" *Id.* at 1009 (quoting *Duenas-Alvarez*, 549 U.S. at 193). DeFrance relies exclusively on the first theory rather than the second. Accordingly, we address only whether it is "evident from its text" that the Montana PFMA statute does not require the use of physical force.

The government maintains that "it cannot be 'evident from its text' that [Montana's PFMA statute] is overbroad, because the text is indistinguishable from the statutory text upheld in *Castleman*." Answering Brief of the United States at 31. We disagree.

In *Castleman*, the Supreme Court considered whether a Tennessee domestic violence statute had as an element the use or attempted use of physical force. 572 U.S. at 168. The Tennessee statute made it unlawful to "intentionally or knowingly cause[] bodily injury" to a domestic partner, *id.* at 169, and it defined "bodily injury" to include "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty," *id.* at 170 (quoting Tenn. Code Ann. § 39-11-106(a)(2) (1997)). The Court concluded that the statute required the use of physical force because "these forms of injury do necessitate force in the common-

law sense." *Id.* [8] Accordingly, the Court held that a conviction under the Tennessee statute "qualifies as a 'misdemeanor crime of domestic violence.'" *Id.* at 171.

As the government points out, the Tennessee statute's language is similar to section 45-5-206(1)(a)'s language. The Tennessee statute makes it unlawful to "intentionally or knowingly cause[] bodily injury" to a domestic partner, *id.* at 169; the Montana statute makes it unlawful to "purposefully or knowingly cause[] bodily injury to a partner or family member," Mont. Code Ann. § 45-5-206(1)(a). The Tennessee statute defines bodily injury to include "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty," *Castleman*, 572 U.S. at 170 (quoting Tenn. Code Ann. § 39-11-106(a)(2) (1997)); the Montana statute defines bodily injury as "physical pain, illness, or an impairment of physical condition and includes mental illness or impairment," Mont. Code Ann. § 45-2-101(5). The language of the two statutes is not identical, and

---

[8] Criminal battery requires "either a bodily injury or an offensive touching." 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.2 (3d ed. 2023). "The force used need not be applied directly to the body of the victim, as in the usual case where one shoots at another or strikes him with knife, club or fist." *Id.* § 16.2(b). "It may also be indirectly applied to the victim, as where one whips the horse on which the victim is riding, causing the horse to bolt and throw his rider, where one drives an automobile into the vehicle occupied by the victim, or where one compels another to touch him in a way offensive to the other." *Id.* (footnotes omitted). "So too a battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance." *Id.* (footnotes omitted). "[A]t common law, the element of force in the crime of battery was 'satisfied by even the slightest offensive touching.'" *Castleman*, 572 U.S. at 163 (quoting *Johnson*, 559 U.S. at 139).

"impairment of the function of a . . . mental faculty," and "mental illness or impairment" could have different meanings. But even if the language of the Tennessee and Montana statutes were identical, that would not end our inquiry, because we do not consider the statutory language in isolation.

To determine whether it is "evident from its text" that a state statute is broader than its federal counterpart, we also employ ordinary tools of statutory interpretation, including state case law interpreting the statutes in question.[9] As we explained in *Castro*, in "analyzing the state statute's text, . . . we may also consider state court interpretations of the statute." 71 F.4th at 738 (citing *United States v. Baldon*, 956 F.3d 1115, 1123 (9th Cir. 2020)); *see also Olea-Serefina v. Garland*, 34 F.4th 856, 863 (9th Cir. 2022) ("[I]n applying the categorical approach to a state offense, we are bound by the state courts' 'interpretation of state law, including [their] determination of the elements' of an offense." (alteration in original) (quoting *Johnson*, 559 U.S. at 138)); *accord Taylor*, 596 U.S. at 859 ("Appreciating the respect due state courts as the final arbiters of state law in our federal system, . . . it ma[kes] sense to consult how a state court would interpret its own State's laws.").

---

[9] On occasion, we have found the statutory language conclusive without consulting case law. *E.g.*, *United States v. Bautista*, 989 F.3d 698, 704–05 (9th Cir. 2021) (holding that an Arizona drug statute was broader than the federal definition of a "controlled substance offense" based solely on a comparison of the two statutes' language; whereas the federal statute excluded hemp, the Arizona statute did not); *United States v. Laurico-Yeno*, 590 F.3d 818, 821–22 (9th Cir. 2010) (declining to consider case law where a California statute on its face fell within the federal definition of a "crime of violence").

In *Grisel*, 488 F.3d at 850–51, for example, our en banc court concluded that a statute's overbreadth was evident from its text based not only on statutory language but also on state case law interpreting and applying the statute. In doing so, we recognized that relying on the statutory language alone may be misleading because the state courts may have narrowed the statute's application through judicial interpretation. *Id.* at 850 (citing *James v. United States*, 550 U.S. 192, 202 (2007), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015)). We followed the same analytical steps in *United States v. Vidal*, 504 F.3d 1072, 1080–86 (9th Cir. 2007) (en banc), *abrogation on other grounds recognized by United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021), where we similarly concluded that a statute's overbreadth was evident from its text based not only on the statutory language but also on state case law, model jury instructions, legislative history, other statutes, and state canons of statutory interpretation. Here, our conclusion that section 45-5-206(1)(a)'s overbreadth is evident from its text considers the statute's language as well as Montana case law. Because Montana's courts have the final say in construing Montana assault statutes, the similarities between the words of the Tennessee and Montana statutes do not foreclose our conclusion that the Montana statute is materially broader. Indeed, as interpreted by *Castro*, Montana case law compels the conclusion that the use of physical force is not an element of 45-5-206(1)(a), because the statute may be violated by inflicting only emotional injury.

The government's reliance on *Castleman* is also misplaced because *Castleman*'s brief analysis of the Tennessee statute did not address whether the Tennessee statute is as expansive as the Montana statute. Although the

Court held that it was impossible to violate the Tennessee statute without the use of physical force, the Court did not consider whether the Tennessee statute could be violated by words alone or whether emotional injury, without more, qualifies as bodily injury under Tennessee law. *Castleman*'s conclusion that the Tennessee statute requires the use of physical force does not resolve whether the Montana statute does as well.

## IV.

We recognize that it may be unlikely that Montana would actually apply section 45-5-206(1)(a) in a case involving only verbal conduct and emotional injury. During a hearing on DeFrance's motions to dismiss the indictment, the district court asked government counsel whether she was "aware of any partner family member assault or [other] assault convictions in the Montana courts that relied on proof of bodily injury caused solely . . . by verbal or other non-physical conduct by a defendant." Government counsel suggested that such cases would be brought under Montana Code Annotated section 45-5-206(1)(c), which makes it unlawful to "purposely or knowingly cause[] reasonable apprehension of bodily injury in a partner or family member," rather than section 45-5-206(1)(a), the statute at issue here. Neither DeFrance nor the government could point to a single case in which Montana applied section 45-5-206(1)(a) in the absence of the use of physical force. But under our case law, a "realistic probability" of overbroad application is conclusively established wherever, as here, a statute's overbreadth is "evident from its text." *See Chavez-Solis*, 803 F.3d at 1009–10. When the statute's text makes its overbreadth evident, no further inquiry into a "realistic probability" of overbroad application is required and a defendant "need not point to an actual case applying the

statute of conviction in a nongeneric manner." *Id.* at 1010. "As long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020).

As interpreted by *Castro*, Montana case law makes evident that Montana Code Annotated section 45-5-206(1)(a) does not "ha[ve], as an element, the use or attempted use of physical force." *See* 18 U.S.C. § 921(a)(33)(A)(ii). Thus, DeFrance's conviction under section 45-5-206(1)(a) does not qualify as a "misdemeanor crime of domestic violence." We therefore reverse DeFrance's § 922(g)(9) conviction, vacate his sentence, and remand for resentencing or other proceedings consistent with this opinion.[10]

\*      \*      \*

For the reasons stated here and in a concurrently filed memorandum disposition, DeFrance's convictions are **AFFIRMED IN PART** and **REVERSED IN PART**, the sentence is **VACATED**, and the case is **REMANDED** for resentencing or for other proceedings consistent with the judgment of this court.[11]

---

[10] Our holding that section 45-5-206(1)(a) does not qualify as a "misdemeanor crime of domestic violence" makes it unnecessary to reach DeFrance's remaining challenges to his § 922(g)(9) conviction.

[11] The conclusion that DeFrance's conviction under section 45-5-206(1)(a) does not qualify as a "misdemeanor crime of domestic violence" may call into question DeFrance's convictions under § 922(a)(6). DeFrance has not challenged his § 922(a)(6) convictions on this ground and we express no opinion as to whether this issue is properly preserved.

DeFrance's motion for judicial notice, Docket No. 43, is **GRANTED**.

---

CHRISTEN, Circuit Judge, concurring:

I do not lightly reach the conclusion that Montana's PFMA statute cannot serve as a predicate for 18 U.S.C. § 922(g)(9) convictions. There is little doubt that when Congress enacted § 922(g)(9), it intended to keep firearms out of the hands of misdemeanor domestic abusers. *Id*. ("It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to . . . possess . . . any firearm . . . ."); *United States v. Hayes*, 555 U.S. 415, 427 (2009) ("Firearms and domestic strife are a potentially deadly combination nationwide."). Yet after today's decision, misdemeanor domestic abusers convicted under Montana Code Annotated section 45-5-206(1)(a) will not be subject to § 922(g)(9)'s prohibition on the possession of firearms. This cannot be what Congress intended, but I conclude that it is the result dictated by faithful application of controlling precedent.

Congress defined "misdemeanor crime of domestic violence" to include a state offense that "has, as an *element*, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii) (emphasis added). In determining the elements of a state offense, we consider not only the statutory language but also state court interpretations of the statute. *See United States v. Taylor*, 596 U.S. 845, 859 (2022) (observing that, when applying the categorical approach: "Appreciating the respect due state courts as the final arbiters of state law in our federal system, . . . it ma[kes] sense to consult how a state court would interpret its own

State's laws."); *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are . . . bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of [that law]."); *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023) ("We begin by analyzing the state statute's text, and we may also consider state court interpretations of the statute."); *United States v. Grisel*, 488 F.3d 844, 850–51 (9th Cir. 2007) (en banc) (considering state court interpretations of state law when applying the categorical approach, in part because a state's courts may have narrowed the scope of the statutory language), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018).

The Montana Supreme Court has interpreted the state's assault statutes broadly. It has held that assault may be committed through words alone, *State v. Sherer*, 60 P.3d 1010, 1013 (Mont. 2002), and that "bodily injury" may consist of nothing more than nonphysical, emotional injury, *State v. Cooney*, 963 P.2d 1272, 1274 (Mont. 1998). Neither purely verbal conduct nor purely emotional injury requires the use of physical force as that term is defined by federal law. *See Johnson*, 559 U.S. at 138 (holding that physical force "refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force"). Accordingly, the Montana statute under which DeFrance was convicted, Mont. Code Ann. § 45-5-206(1)(a), does not "ha[ve], as an element, the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A)(ii), and a conviction under Montana's PFMA statute does not qualify as a "misdemeanor crime of domestic violence" for purposes of § 922(g)(9).

The district court reasonably concluded that Montana would not actually apply its statute in a case that does not involve the use of physical force; neither party could identify an instance in which it has. But as the Supreme Court has recently explained, § 921(a)(33)(A) "doesn't ask whether the crime is *sometimes* or even *usually* associated with . . . the actual or attempted use of force[]. It asks whether the government must prove, as an *element* of its case, the use [or] attempted use . . . of force." *See Taylor*, 596 U.S. at 857–58.[1] And our circuit has held that, "[a]s long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020). What matters for purposes of the categorical approach is that the Montana statute does not have the use of physical force as an element, not whether Montana is likely to apply its statute in an overbroad manner.

Ironically, the result in this case would be different if Montana's laws were less protective of domestic violence victims. It is only because Montana defines assault broadly—as encompassing purely verbal conduct and purely emotional injury—that the Montana offense at issue here

---

[1] *Taylor* involved the federal definition of "crime of violence" under the elements clause of § 924(c). That provision is similar, but not identical, to the provision at issue here. *Compare* 18 U.S.C. § 924(c)(3)(A) ("For purposes of this subsection the term 'crime of violence' means an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."), *with id.* § 921(a)(33)(A) ("[T]he term 'misdemeanor crime of domestic violence' means an offense that . . . is a misdemeanor under Federal, State, Tribal, or local law; and . . . has, as an element, the use or attempted use of physical force . . . .").

sweeps more broadly than the federal definition of "misdemeanor crime of domestic violence."

The counterintuitive result in this case is not carved in stone. First, the opinion issued today relies on the Montana Supreme Court's interpretation of Montana assault statutes generally, not the PFMA statute specifically. If our court misunderstands the scope of the phrase "bodily injury" in the PFMA statute, the outcome of this categorical analysis could change. Second, Congress has the power to amend the federal definition of "misdemeanor crime of domestic violence" to address the anomalous result in this case and others like it. For example, the outcome of this case likely would be different if the definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A)(ii) turned on an offender's actual conduct rather than the elements of the crime of conviction. Alternatively, Congress could focus the § 921(a)(33)(A) inquiry on a statute's practical scope rather than its formal elements—asking whether there is a meaningful likelihood that the statute would be applied in an overbroad manner. In *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), and *Moncrieffe v. Holder*, 569 U.S. 184, 191, 205–06 (2013), for example, the Court noted that "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 569 U.S. at 191 (quoting *Duenas-Alvarez*, 549 U.S. at 193). This rule has been applied inconsistently, and our current circuit precedent does not require this showing where it is evident from a statute's text that the state offense is broader than its federal counterpart. *See Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009–10 (9th Cir. 2015). Congress is free to codify the standard set out in *Duenas-Alvarez*, or otherwise to adopt a definition of

"misdemeanor crime of domestic violence" that would require offenders to show something more than a theoretical possibility of overbroad application in order to negate § 922(g)(9)'s important domestic violence protections.

---

RAKOFF, District Judge, concurring:

While I am obliged by precedent to join in the Court's opinion, I continue to be deeply troubled by the so-called "categorical approach," first adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and still binding on all lower courts. As we stated in *Castro*, this approach "requires, for better or worse, that we ignore what actually occurred during the defendant's prior felony." *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023). It seems to me that case after case, including this one, have demonstrated that the categorical approach is "for worse," leading to bizarre results.

I agree with Judge Christen that Congress should fix this problem, not least because it is hard to believe that Congress intended these results when it enacted § 922(g)(9). *See United States v. Castleman*, 572 U.S. 157, 160 (2014) ("Congress enacted § 922(g)(9) . . . to '"close [a] dangerous loophole"' in the gun control laws: While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors."). But I have not given up hope that the Supreme Court might still fix the problem or at least take a more realistic view of how to interpret the categorical approach.

Indeed, if one were writing on a blank slate, one might reach a different conclusion than did the Supreme Court in

*Taylor*. In that case, the Supreme Court adopted the categorical approach for three reasons, none of which is compelling. First, the Court stated that the statutory language "generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Taylor*, 495 U.S. at 600. But any language as equivocal as "generally supports the inference" invites reconsideration in light of experience. Indeed, the precise statutory text that the Court was asked to interpret did not even include the "element" language often cited to justify the necessity of the categorical approach. Second, the Court stated that the legislative history "shows that Congress *generally* took a categorical approach." *Id.* at 601 (emphasis added). But this very language illustrates that the legislative history was mixed. Third, and seemingly most important to the Court in *Taylor*, the Court stated that "the practical difficulties and potential unfairness of a factual approach are daunting." *Id.* But as the instant case demonstrates, ascertaining the relevant underlying facts has not proved difficult in most cases, where the relevant facts have been fully established by allocutions-on-the-record and the like. And, in any event, such alleged difficulties are, in my view, no excuse for ignoring the actual facts of a case in favor of hypothetical guesses at how broadly the underlying statute might be construed.

In short, it seems to me that Congress never remotely intended the counter-intuitive results that the categorical approach has engendered. Although the Supreme Court has thus far declined the opportunity to reconsider whether Congress really intended the categorical approach, I join the growing number of lower-court judges and Supreme Court

justices who have called into question the propriety of this approach. *See, e.g.*, *United States v. Taylor*, 596 U.S. 845, 861 (2022) (Thomas, J., dissenting) ("This holding exemplifies just how this Court's 'categorical approach' has led the Federal Judiciary on a 'journey Through the Looking Glass,' during which we have found many 'strange things.' Rather than continue this 30-year excursion into the absurd, I would hold Taylor accountable for what he actually did and uphold his conviction.") (citation omitted); *Mathis v. United States*, 579 U.S. 500, 541 (2016) (Alito, J., dissenting) ("A real-world approach would avoid the mess that today's decision will produce. Allow a sentencing court to take a look at the record in the earlier case to see if the place that was burglarized was a building or something else."); *United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring) ("A casual reader of today's decision might struggle to understand why we are even debating if ramming a vehicle into a police officer is a crime of violence. The reader's struggle would be understandable. The time has come to dispose of the long-baffling categorical approach."); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) ("My concern is that use of these tests can lead courts to reach counterintuitive results, and ones which are not what Congress intended.").